IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD A. THOUROT,            ) | Civ. No. 08-00369 BMK |
| ) | |
| Plaintiff,        ) | ORDER GRANTING |
| ) | DEFENDANT'S MOTION FOR |
| vs.            ) | SUMMARY JUDGEMENT; |
| ) | ORDER DENYING PLAINTIFF'S |
| UNITED STATES OF AMERICA,     ) | COUNTER-MOTION AND |
| ) | SUPPLEMENTAL COUNTER- |
| Defendant.        ) | MOTION TO DEFENDANT'S |
| ) | MOTION FOR SUMMARY |
| _____ ) | JUDGMENT |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT; ORDER DENYING PLAINTIFF'S COUNTER-MOTION
AND SUPPLEMENTAL COUNTER-MOTION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Before the Court are the United States of America's Motion for

Summary Judgment, as well as Plaintiff Richard A. Thourot's Counter-Motion and

Supplemental Counter-Motion to the Government's Motion for Summary

Judgment.  The Court heard these motions on January 8, 2010.  After careful

consideration of the motions, the supporting and opposing memoranda, and the

arguments of counsel, the Government's motion is GRANTED, and Thourot's

motions are DENIED.

## FACTUAL BACKGROUND

On September 16, 2007, Thourot was an inmate at the Federal Detention Center ("FDC") in Honolulu. (Thourot Decl'n ¶ 2.) After he returned to his unit from working in the kitchen, he asked other inmates if they were watching a particular television in the common area. (Id. ¶ 3.) Upon learning that no one was watching that tv, he asked Officer Brodie Crawford, who was at the officer's station about 93.5 feet away from the tv area, to turn the channel or for the remote control. (Thourot Decl'n ¶ 3; Crawford Decl'n ¶¶ 4, 6.) Officer Crawford asked Thourot if anyone was watching that particular tv, and Thourot told him no. (Thourot Decl'n ¶ 3.) Crawford then gave the remote control to Thourot. (Id.; Crawford Decl'n ¶ 4.)

Thourot walked back to the tv area and changed the channel. (Thourot Decl'n ¶ 4; Government's Ex. A.) Less than a minute later, another inmate, Wayne Uehara, asked who had changed the channel. (Thourot Decl'n ¶ 4; Ex. A.) Uehara took the remote control from Thourot, walked toward the tv, then turned around and threw the remote at Thourot. (Thourot Decl'n ¶ 4.) After several seconds of argument, Thourot pushed Uehara backward. (Id.; Government's Ex. A.) A third inmate, Shane Rodrigues, who had been watching

Thourot argue with Uehara, punched Thourot from behind in an attempt "to stop him from fighting with inmate Uehara." (Thourot's Ex. 5.)

An inmate informed Officer Crawford that "something was occurring in the back of the unit." (Crawford Decl'n ¶ 5.) After securing the officer's area, he approached Thourot and "witnessed inmate Thourot getting up from the floor with blood flowing from his head and inmate Wayne Uehara being held back by [another inmate]." (Id. ¶ 6.) According to security camera footage from the unit, Officer Crawford arrived at the scene less than a minute after Thourot was punched. (Government's Ex. A.)

According to FDC Post Orders, "remote controls will be maintained by the unit officer ONLY" and "[i]nmates will never [be] allowed to turn the televisions on or off or change the channels." (Thourot's Ex. 1.) At the time Officer Crawford gave Thourot the remote control, Thourot knew that he was not allowed to have the remote. (Thourot Depo. at 37-38.)

On August 14, 2008, Thourot filed this action. His First Amended Complaint ("FAC") asserts a negligence claim against the Government under the Federal Tort Claims Act. Thourot also asserts a § 1983 claim against Officer Crawford, but that claim was dismissed on August 26, 2009. (Doc. 51.) Both parties now move for summary judgment on Thourot's sole claim for negligence.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

## DISCUSSION

The Federal Tort Claims Act ("FTCA") establishes federal jurisdiction over civil suits for money damages against the United States for

> personal injury or death caused by the negligent or
> wrongful act or omission of any employee of the

> Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  "Thus, the FTCA directs [courts] to look to the law of the state in which the government official committed the tort."  Schwarder v. United States, 974 F.2d 1118, 1112 (9th Cir. 1992); Campos v. United States, No. 1:06-CV-00526 HG-KSC, 2008 WL 2230717, at *4 (D. Haw. May 30, 2008) ("Even when the injury occurs on federal property, the finding of negligence must be based upon state law.").  Here, Thourot "must demonstrate that state law would recognize a cause of action in negligence against a private individual for like conduct."  Id.

> Under Hawaii law, the elements of a negligence cause of action are:
>
> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
> 2. A failure on the defendant's part to conform to the standard required:  a breach of the duty;
> 3. A reasonably close causal connection between the conduct and the resulting injury and
> 4. Actual loss or damage resulting to the interests of another.

Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (Haw. 1987).

With respect to the first element of a negligence claim–the duty imposed on the defendant–Hawaii courts recognize that the state, "by reason of the special relationship created by its custody of a prisoner, is under a duty to the prisoner to take reasonable action to protect the prisoner against unreasonable risk of physical harm." Haworth v. State, 60 Haw. 557, 563, 592 P.2d 820, 824 (Haw. 1979); see also 18 U.S.C. § 4042 (noting the Bureau of Prisons shall "provide for the protection . . . of all persons charged with or convicted of offenses against the United States"). This duty arises out of "the deprivation by the state of the prisoner's normal opportunities to protect himself." Id. "When the custodial authorities are charged with knowledge that the prisoner may incur harm unless preclusive measures are taken, reasonable care must be exercised to prevent such harm." Id. at 564, 592 P.2d at 825.

Under Hawaii law, a defendant's duty to act or to refrain from acting "is owed only to those who are foreseeably endangered by the conduct and _only with respect to those risks or hazards whose likelihood made the conduct or omission unreasonably dangerous_." Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 12, 143 P.3d 1205, 1214 (Haw. 2006) (emphasis added). In determining the scope of duty owed in a particular case, courts must "evaluate whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm

experienced." Id. at 13, 143 P.2d at 1215.  Indeed, "the risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care." Id.

In the present case, Thourot appears to assert three bases for his negligence claim:  (1) Officer Crawford negligently gave Thourot the remote control when asked for it (Thourot's Supp. Motion at 2); (2) the Government negligently failed to isolate "inherently dangerous gang hoodlums away from Thourot" (id. at 2); and (3) Officer Crawford acted negligently by not responding quickly to Thourot's cries for help (FAC ¶ 10).  Each basis is addressed below.

    a.    Giving Thourot the Remote Control

With respect to the remote control, Thourot asked Officer Crawford for the remote, and Officer Crawford gave it to him.  (Crawford Decl'n ¶ 4.) Giving the remote to Thourot was in violation of the FDC's Special Post Orders, which states that "remote controls will be maintained by the unit officer ONLY" and that "[i]nmates will never be allowed to turn the televisions on or off or change the channels."  (Thourot's Ex. 1 at 1.)

Thourot appears to argue that giving the remote control to him was a negligent act that resulted in his injuries.  (Thourot Supp. Motion at 2.)  However,

the scope of the Government's duty to protect prisoners like Thourot "is owed only to . . . those risks or hazards whose likelihood made the conduct unreasonably dangerous." Pulawa, 112 Haw. at 12, 143 P.3d at 1214. Determining the scope of duty "involves a prospective consideration of the facts existing at the time of the negligent conduct." Id. at 13, 143 P.3d at 1215 (emphasis in original).

Before Officer Crawford gave the remote control to Thourot, Crawford asked him if anyone was watching a particular television. (Thourot Decl'n ¶ 3.) Thourot stated that he had already checked with the other inmates and that no one was watching that television. (Id.) Considering the facts prospectively from the time Thourot asked for the remote, Officer Crawford had no reason to believe that Thourot would later push Uehara, which caused Rodrigues to punch Thourot. Indeed, at the time Crawford gave the remote to Thourot, there was very little likelihood, if any, that giving the remote to Thourot would result in any injury. Because giving Thourot the remote control was not likely to result in the kind of injury he suffered, the scope of the Government's duty to protect Thourot did not extend to protecting him from Rodrigues's unforeseeable actions. See Pulawa, 112 Haw. at 13, 143 P.3d at 1215. (Thourot Decl'n ¶ 3; Thourot's Ex. 5 & 6.)

Thourot argues that the internal policy prohibiting inmates from handling the remote control is based on safety concerns. However, there is no evidence in the record concerning the purpose of that policy. It may well be that the policy was intended to prevent inmates from damaging television controls or equipment. Without any evidence showing that the policy was intended to prevent the type of injury suffered by Thourot, the Court declines to make that inference.

Alternatively, even if this Court were to agree with Thourot that the Government breached a duty it owed to him, Hawaii's modified comparative negligence statute, Haw. Rev. Stat. § 663-31, would bar Thourot's claim. Under this statute, the degree of negligence of each party must be weighed. Rapoza v. Parnell, 83 Haw. 78, 82, 924 P.2d 572, 576 (Haw. Ct. App. 1996). Section 663-31 bars a plaintiff's recovery if the plaintiff's negligence is greater than the negligence of all defendants involved. Id. If recovery is not barred, § 663-31 reduces the plaintiff's recovery against the defendants by the proportion of fault of the negligent plaintiff. Id. The purpose of this statute is "to allow one party at fault in an accident resulting in injury to be recompensed for the damages attributable to the fault of another if the former's negligence was not the primary cause of the accident." Id.

In this case, even if the Court were to agree with Thourot that Officer Crawford was negligent in giving him the remote control, Thourot's own negligent conduct was the primary cause of his injuries. At the time Thourot was given the remote control, he was aware of the prison rule "that no inmate was allowed to have the remote." (Thourot Depo. at 37.) Thourot nevertheless accepted the remote control and changed the channel. After changing the channel, Thourot got into an argument with Uehara. According to the security camera footage, Uehara and Thourot were merely exchanging words when Thourot pushed Uehara backward. At that point, Rodrigues punched Thourot in an attempted "to stop him from fighting with inmate Uehara." (Thourot's Ex. 5.)

Therefore, even if Officer Crawford acted negligently in giving the remote control to Thourot, Thourot's decision to push Uehara was the primary cause of his injuries. Rodrigues punched Thourot to stop his fight with Uehara; Rodrigues did not punch Thourot because he had the remote control. (Id.) Accordingly, even if the Court concluded that Officer Crawford was negligent, Thourot's own negligent conduct, which was the primary cause of his injuries, would bar any recovery for his negligence claim against the Government. Haw. Rev. Stat. § 663-31; Rapoza, 83 Haw. 82-83, 924 P.2d at 576-77; see also Kahan v. United States, 73 F. Supp. 2d 1172, 1180 (D. Haw. 1999) ("under Hawaii law, if a

plaintiff is found to be over fifty percent responsible for his own injuries, the doctrine of comparative negligence bars recovery for those injuries, regardless of any negligence by a defendant").

        b.      Failing to Isolate Gang Members from Thourot

In his Supplemental Counter-Motion, Thourot contends that "[t]he facility should have isolated these inherently dangerous gang hoodlums away from Thourot." (Thourot Supp. Motion at 2.) The Court interprets this as an assertion that the Government failed to separate Thourot from gang members while at the FDC. However, no evidence in the record establishes that Uehara or Rodrigues were in a gang or that the Government knew of their alleged gang membership when it housed Thourot in the same unit as them. In the absence of evidence suggesting that the Government knew of their gang membership, Thourot fails to establish that the Government acted negligently in housing him in the same unit as Uehara and Rodrigues.

        c.      Not Responding Quickly to Thourot's Cries for Help

In his First Amended Complaint, Thourot alleges that, during his attack, he "cried out for Defendant and its agent Crawford to intervene" but that Officer Crawford "failed to act quickly." (FAC ¶ 10.) The Court interprets this

statement as an assertion that Officer Crawford acted negligently when he failed to respond to the attack quickly.

At the time of the attack, Officer Crawford was at the officer's station, which is 93.5 feet away from the area where Thourot was attacked. (Alderton Decl'n ¶ 4; Crawford Decl'n ¶ 6.) After Crawford gave the remote control to Thourot, he continued to log-in inmates returning from the work line, when an inmate informed him that "something was occurring in the back of the unit." (Crawford Decl'n ¶ 5.) Officer Crawford secured the officer's area and proceeded toward the area where Thourot was when he "witnessed inmate Thourot getting up from the floor . . . and inmate [Uehara] being held back by [another inmate]." (Id. ¶ 6) According to the security camera footage, an inmate was restraining Uehara 20 seconds after Rodrigues punched Thourot, and Thourot got up from the floor 3 seconds later. (Government's Ex. A.) Considering that Officer Crawford had to walk 93.5 feet to Thourot, a 23 second response time is entirely reasonable.

        d.     Conclusion

In sum, Thourot fails to establish that Crawford acted negligently when he gave the remote control to Thourot or when he responded to the attack, or that the Government acted negligently when it housed Thourot in the same unit as

Uehara and Rodrigues.  Accordingly, the Government is entitled to summary judgment on Thourot's claim for negligence.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's Motion for Summary Judgment (Doc. 59) and DENIES Thourot's Counter-Motion (Doc. 63) and Supplemental Counter-Motion (Doc. 65).

DATED:  Honolulu, Hawaii, January 21, 2010.

IT IS SO ORDERED.



       /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Richard A. Thourot v. United States of America, Civ. No. 08-00369 BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT; ORDER DENYING PLAINTIFF'S COUNTER-MOTION AND SUPPLEMENTAL COUNTER-MOTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.